**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pearl Wilson, Personal Representative of the Estate of Phillip Wilson, deceased; and Terry and Pearl Wilson, surviving parents of Phillip Wilson,<br><br>    Plaintiffs,<br><br>vs.<br><br>Maricopa County, a public entity; Maricopa County Sheriff's Office, a division of Maricopa County; Joseph M. Arpaio, Maricopa County Sheriff, and Ava Arpaio, his wife; Maria Leon and John Doe Leon, her husband; Mark W. Stump and Jane Doe Stump, his wife; Rocky Medina and Jane Doe Medina, his wife; and Mickie Curtis and Jane Doe Curtis, his wife,<br><br>    Defendants. | No. CV-04-2873-PHX-DGC<br><br>(Court of Appeals No. 06-17191)<br><br>**ORDER** |

Defendant Arpaio has field a motion to stay this litigation on the basis of his interlocutory appeal. Dkt. #300. Plaintiffs have responded with a motion asking the Court to certify the appeal as frivolous. Dkt. #302. The Court will deny the Sheriff's motion and grant Plaintiffs' motion.[1]

---

[1] The request for oral argument is denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

## I.     Background.

Phillip Wilson was an inmate at a Maricopa County jail known as "Tent City." On July 22, 2003, Wilson was assaulted by other inmates and later died from his injuries. Plaintiffs allege that Sheriff Arpaio is personally liable under 42 U.S.C. § 1983 for violating Wilson's Eighth Amendment rights and under state law for operating Tent City in a grossly negligent manner. Dkt. #1.

On November 9, 2006, the Court denied summary judgment on Plaintiff's § 1983 and gross negligence claims against Sheriff Arpaio. Dkt. #296 at 3-12. The Court also denied the Sheriff's claim of qualified immunity, concluding that the Sheriff was not entitled to immunity from suit under the three-part test set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). Dkt. #296 at 11-12. The Sheriff has appealed this qualified immunity ruling pursuant to 28 U.S.C. § 1291. Dkt. #297.

## II.    Discussion.

Sheriff Arpaio requests that the Court stay the entire case pending the outcome of his appeal because he "will be irreparably harmed if this matter proceeds through the pre-trial process, and through trial, before he has a chance to prosecute his appeal." Dkt. #300 at 1-2. Plaintiffs argue that the Sheriff's appeal is frivolous, and ask the Court to certify it as such and proceed to trial on all remaining claims. Dkt. #302. The Sheriff counters that his appeal has merit, arguing that the Court erred in ruling (1) that the law was clearly established, (2) that a jury question exists on what a reasonable sheriff would think, and (3) that the inquiry involves whether he would have been "mistaken about the law." Dkt. #305 at 2. The Court will address these arguments in turn.

### A.    Clearly Established Right.

The Court concluded in the summary judgment order that the right allegedly violated was clearly established at the time of the assault. Dkt. #296 at 12 (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994), and *Flanders v. Maricopa County*, 54 P.3d 837, ¶ 50 (Ariz. Ct. App. 2002)). Sheriff Arpaio contends that the Court's statement of the clearly established right was "way too general." Dkt. #305 at 2-3. The Court disagrees.

The Court did not base its decision on a general Eighth Amendment right to be free from cruel and unusual punishment. Rather, the Court held that Phillip Wilson had the specific Eighth Amendment right to be free from a jail official's deliberate indifference to inmate-on-inmate assaults. Dkt. #296 at 12. This right is clearly established. *See Farmer*, 511 U.S. at 833 ("Having incarcerated 'persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.") (citation and alterations omitted); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) ("Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. . . . Within this volatile 'community,' prison administrators . . . are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."); *Hydrick v. Hunter*, 466 F.3d 676, 698 (9th Cir. 2006) ("Plaintiffs' right to be protected and confined in a safe institution [is] clearly established.")*; Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001) ("At the time Robinson was attacked in the Calipatria prison yard in 1996, the law regarding prison officials' duty to take reasonable measures to protect inmates from violence at the hands of other prisoners was 'clearly established.'"); *Flanders*, 54 P.3d ¶ 50 ("*Farmer* acknowledged the 'settled' proposition that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").[2]

---

[2]*See also Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) ("There can be no debate" that an inmate's "right to be from deliberate indifference to rape and assault" by other inmates is "clearly established"); *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir. 1988) ("[T]he parameters of the 'right' that the defendants violated are sufficiently clear in light of prior decisional law.") (citing *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974) ("The defendants, being responsible for the decedent's care and safekeeping, had a duty to protect him from attacks by fellow inmates.")); *Buckner v. Hollins*, 983 F.2d 119, 123 (8th Cir. 1993) ("The Eighth Amendment right of an inmate to be free from cruel and unusual punishment is well established, as [is] . . . a prison official's Section 1983 liability for failure to protect a prisoner from foreseeable attack or otherwise to guarantee his or her safety.");

1    Sheriff Arpaio cites *Stovall v. McAtee*, 35 F. Supp. 2d 1125 (S.D. Ind. 1997), for the
2 proposition that "'[t]he law' that needs to be clearly established at the relevant time requires
3 a much more specific focus on the facts [he] faced at the time of the Wilson incident."
4 Dkt. #305 at 3.  The district court in *Stovall* held that the burden of identifying the clearly
5 established right "is most often met by referring the court to prior cases finding violations
6 of the Constitution under similar circumstances." 35 F. Supp. 2d at 1128-29.  The Supreme
7 Court has made clear, however, that "officials can still be on notice that their conduct violates
8 established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741
9 (2002) (citing *United States v. Lanier*, 520 U.S. 259 (1997)).  True, "[t]he contours of the
10 right must be sufficiently clear that a reasonable official would understand that what he is
11 doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  But this does
12 not mean "that an official action is protected by qualified immunity unless the very action
13 in question has previously been held unlawful[.]" *Id.* (citing *Mitchell v. Forsyth*, 472 U.S.
14 511, 535 n. 12 (1985)).  "Precedent directly on point is not necessary to demonstrate that a
15 right is clearly established.  Rather, if the unlawfulness is apparent in light of preexisting law,
16 then the standard is met.  In addition, even if there is no closely analogous case law, a right
17 can be clearly established on the basis of common sense." *Giebel v. Sylvester*, 244 F.3d
18 1182, 1189 (9th Cir. 2001) (citations and alterations omitted).  This principle has been
19 recognized by numerous Ninth Circuit cases.  *See San Jose Charter of the Hells Angels*
20 *Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) ("There need not be
21 prior authority dealing with this precise factual situation in order to deny [the officer]
22 qualified immunity for his actions"); *Deorle v. Rutherford*, 272 F.3d 1272, 1285-86 (9th Cir.
23 2001) ("Although there is no prior case prohibiting the use of this specific type of force in
24 precisely the circumstances here involved, that is insufficient to entitle Rutherford to
25 qualified immunity:  notwithstanding the absence of direct precedent, the law may be, as it
26
27
28 *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) ("[P]rison officials [have a duty] to take reasonable measures to abate substantial risks of serious harm, of which they are aware. . . . That is the 'clearly established constitutional right' in this case.").

- 4 -

1  was here, clearly established."); *Carnell v. Grimm*, 74 F.3d 977, 979-80 (9th Cir. 1996)
2  ("The defendants argue that the right in question was phrased too broadly . . . . We do not
3  agree. . . . [I]f the issue needed to be defined more narrowly, it would allow 'Appellants, and
4  future defendants, to define away all potential claims.'") (quoting *Kelley v. Borg*, 60 F.3d
5  664, 667 (9th Cir. 1995)); *Wood v. Ostrander*, 879 F.2d 583, 592 (9th Cir. 1989) ("Ostrander
6  seemingly suggests that this case can be disposed of if it does not bear a strict factual
7  similarity to previous cases finding liability. However, this crabbed view of the [qualified]
8  immunity principle cannot withstand analysis."); *see also Muhammad v. San Joaquin County*
9  *Jail*, No. CIV S-02-0006 LKK CMK P, 2006 WL 1282944, at *6 (E.D. Cal. May 10, 2006)
10 ("When identifying the right allegedly violated by defendants, a court must define the right
11 more narrowly than the constitutional provision guaranteeing the right, but more broadly than
12 the factual circumstances surrounding the alleged violation. For instance, a statement that
13 the Eighth Amendment guarantees medical care without deliberate indifference to serious
14 medical needs is a narrow statement of the right for conducting the clearly established
15 inquiry.") (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

16      The salient question, then, is whether the state of the law in July 2003 would have
17 provided a reasonable sheriff in Defendant Arpaio's position with fair warning that his
18 conduct was unconstitutional. *See Saucier*, 533 U.S. at 206; *City of San Jose*, 402 F.3d at
19 975; *Devereaux v. Abbey*, 263 1070, 1075 (9th Cir. 2001) (en banc). When answering this
20 question, the Court must construe the evidence in Plaintiffs' favor. *See Saucier*, 533 U.S. at
21 201.[3] So construed, the evidence shows that Sheriff Arpaio was deliberately indifferent to

---

[3]*See also City of San Jose*, 402 F.3d at 970-71 ("'To the extent that the defendants' arguments quibble with the district court's view of the facts, we do not consider them. We view the evidence in the light most favorable to the plaintiffs.'") (citation omitted); *Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th Cir. 2003) ("Where disputed facts exist, we will determine if the denial of qualified immunity was proper by assuming that the version of events offered by the non-moving party is correct."); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) ("The district court erred in its analysis of the reasonableness inquiry of the second *Saucier* prong because it failed to view the evidence in the light most favorable to the plaintiff, and instead resolved all material disputes in favor of the officers[.]") (citation omitted).

1  the risk of inmate-on-inmate assaults at Tent City.

2  Plaintiffs presented evidence that Sheriff Arpaio has for many years been aware that
3  conditions at Tent City were likely to create a substantial risk of serious harm to inmates.
4  Dkt. #240 ¶¶ 80, 187. These conditions include a lack of security inherent in the use of tents,
5  inadequate staffing, officers abandoning their posts and making off-yard shift changes,
6  intentionally harsh inmate living conditions, and a lack of officer training. Dkt. #238
7  ¶¶ 60-67, 77, 85-88, 140, 145; Dkt. #240 ¶¶ 81-82, 89-95, 110, 112-19, 184, 188. These
8  problems were known to the Sheriff through a variety of sources, including consultant
9  reports, concerns expressed by a County risk manager, and a prior state court case in which
10 the County and Sheriff Arpaio were held liable under § 1983 for an inmate assault at Tent
11 City. Dkt. #238 ¶¶ 60, 63-67, 86-88, 140; *see Flanders*, 54 P.3d 837 (affirming a jury verdict
12 against Sheriff Arpaio and holding that the lack of supervision and security measures at Tent
13 City supported the jury's finding of deliberate indifference).

14 In summary, Phillip Wilson had the clearly established Eighth Amendment right to
15 be free from a jail official's deliberate indifference to inmate-on-inmate assaults, and the
16 evidence presented by Plaintiffs, viewed in the light most favorable to Plaintiffs, shows that
17 Sheriff Arpaio was deliberately indifferent to this very risk.

18 **B.    Denial of Qualified Immunity on Summary Judgment.**

19 The Sheriff argues that "the inquiry of whether a reasonable sheriff could believe that
20 [the Sheriff's] conduct was lawful was an *objective* inquiry for the Court, not a subjective
21 one for the jury." Dkt. #305 at 9 (citing *Act Up!/Portland v. Bagley*, 988 F.2d 686, 873 (9th
22 Cir. 1993) (emphasis in original)). Although it is true that questions of qualified immunity
23 should be resolved as a matter of law when the facts are clear, disputed issues of material fact
24 concerning the knowledge and conduct of the officers in question prevent such a legal
25 resolution: "Where the officers' entitlement to qualified immunity depends on the resolution
26 of disputed issues of fact in their favor, and against the non-moving party, summary
27 judgment is not appropriate." *Wilkins*, 350 F.3d at 956; *see Act Up!*, 988 F.2d at 873; *see*
28 *Marks v. Clarke*, 102 F.3d 1012, 1026 (9th Cir. 1997). The inquiry in such a case "is not a

legal inquiry, but rather a question of fact best resolved by the jury." *Wilkins*, 350 F.3d at 955.

Here, there are genuine issues of material fact regarding the conditions of confinement at the time of the assault and what the Sheriff knew and did about them. *See* Dkt. #296. The Court could not conclude on the basis of undisputed facts that a reasonable sheriff in Defendant Arpaio's position could have made a mistake as to what the law required with respect to the safety of inmates at Tent City. *Id.* at 12. The disputed facts must therefore be resolved by a jury. *Wilkins*, 350 F.3d at 955; *Ortega v. O'Connor*, 146 F.3d 1149, 1156 (9th Cir. 1998).[4]

**C.    A Semantic Dispute.**

The Court's summary judgment order stated that if the constitutional right was clearly established, and yet a reasonable person in the defendant's position could have made a mistake regarding "what the law required," then the defendant would be entitled to qualified immunity. Dkt. #296 at 12. Sheriff Arpaio claims that this is an incorrect statement of the law: "The correct inquiry is, given the clearly established law[,] . . . whether a reasonable officer in [the Sheriff's] position could have believed that the Sheriff's *conduct* was constitutionally acceptable." Dkt. #305 at 6-7 (emphasis in original).

This is a distinction without a difference. A reasonable officer who believes that his "conduct" is constitutionally acceptable (Sheriff Arpaio's formulation) necessarily believes that his conduct conforms to "what the law requires" (the Court's formulation). The question for qualified immunity purposes is the same – whether such a belief could be objectively reasonable under the circumstances. The Court's formulation followed the Supreme Court's language in *Saucier*: "If the officer's mistake *as to what the law requires* is reasonable, . . .

---

[4]If the Sheriff is arguing that he is entitled to immunity even when the evidence is construed in Plaintiffs' favor, the Court rejects this argument. As noted above, Plaintiffs have produced facts suggesting that Defendant Arpaio was deliberately indifferent to the safety of inmates at Tent City. Moreover, where "the law is clearly established, the immunity defense 'ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'" *Hydrick*, 466 F.3d at 702.

- 7 -

the officer is entitled to [qualified] immunity[.]"  533 U.S. at 205 (emphasis added); *see Motley*, 432 F.3d at 1077; *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).

### D.     Certification.

"Should a district court find that the defendants' claim of qualified immunity is frivolous or has been waived, the district court may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial." *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992).  A qualified immunity claim may be certified as frivolous if the claim is "'so baseless that it does not invoke appellate jurisdiction[.]'" *Marks*, 102 F.3d at 1017-18 n.8 (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)).  Stated differently, an appeal from an order denying qualified immunity on summary judgment is frivolous where the order "is so plainly correct that nothing can be said on the other side." *Apostol*, 870 F.2d at 1139; *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (stating that an issue is frivolous on appeal if it has "no arguable basis in fact or law"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that a district court may issue a certificate of appealability only if there has been a showing that "reasonable jurists" would find the district court's ruling "debatable or wrong").

The Court concludes that Sheriff Arpaio's interlocutory appeal is frivolous.  The right at issue was clearly established at the time of Phillip Wilson's assault, and the evidence, construed in Plaintiffs' favor, shows that no reasonable sheriff in Defendant Arpaio's position could have believed that his conduct was lawful.  This matter must proceed to trial.  Sheriff Arpaio's qualified immunity appeal has no reasonable basis in fact or law.  *See Frunz v. City of Tacoma*, No. 05-35302, 2006 WL 3313989, at *4 n.10 (9th Cir. Nov. 13, 2006) (ordering the defendants to show cause why they should not be sanctioned for filing a frivolous appeal that included a claim of qualified immunity).

**IT IS ORDERED:**

1. Defendant Arpaio's motion to stay trial court proceedings (Dkt. #300) is **denied**.

2. Plaintiffs' motion for certification that Defendant Arpaio's appeal is frivolous

(Dkt. #302) is **granted**.

3. Defendant Arpaio's interlocutory appeal in this case (Dkt. #297) is **certified as frivolous**.

4. The schedule set forth in the Court's Order Setting Final Pretrial Conference (Dkt. #299) shall remain in place.

5. The Clerk shall send a copy of this order to the Court of Appeals for the Ninth Circuit (Case No. 06-17191).

DATED this 13th day of December, 2006.

*[signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge