**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Pearl Wilson, Personal Representative of the Estate of Phillip Wilson, deceased; Terry Wilson and Pearl Wilson, surviving parents of Phillip Wilson, <br><br> Plaintiffs, <br><br> vs. <br><br> Maricopa County, a public entity, et al., <br><br> Defendants. | No. CV-04-2873 PHX-DGC <br><br> **ORDER** |

The parties have filed numerous motions in limine in preparation for the final pretrial conference.  This order will set forth the Court's rulings on those motions.[1]

1.     The Court has considered Plaintiffs' First Motion in Limine Requesting the Court to Take Judicial Notice of the *Flanders* opinion.  Dkt. #316.  The Court has also considered Defendants' Motion in Limine #2 Regarding *Flanders v. Maricopa County*. Dkt. #323.  The motions will be **denied in part and granted in part** as explained below.

Plaintiffs ask the Court to take judicial notice of the Arizona Court of Appeals' decision in *Flanders v. Maricopa County*, 54 P.3d 837 (2002), to admit the *Flanders* opinion for all purposes at trial, and to instruct the jury to accept as conclusive the existence of *Flanders* and its findings.  Defendants ask the Court to exclude all references to the *Flanders*

---

[1] The request for oral argument will be denied.  The parties have provided the court with memoranda on each motion.  To the extent the memoranda are not sufficient for the Court to rule, the Court will deny the motion in limine and the issue will be addressed during trial.

1   opinion and to prohibit Plaintiffs' counsel from questioning witnesses about the decision.

2   The Court must determine whether *Flanders* is relevant under Rule 401, whether it should

3   be excluded under Rules 403 and 404, and whether the Court may take judicial notice of the

4   decision under Rule 201.

5        The beating of Jeremy Flanders at Tent City is relevant to the question of whether

6   Defendants were on notice of dangerous conditions at Tent City and the need for additional

7   protection of inmates. "Evidence of prior or subsequent incidents or accidents is frequently

8   offered by plaintiffs in personal injury actions as relevant to a variety of issues, such as to

9   show the defendant's notice[.]"  2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's*

10  *Federal Evidence* § 401.08[2] at 401-50 (2006). "The relevance of such [incidents] generally

11  depends on whether the conditions operating to produce the prior incidents or accidents were

12  substantially similar to the occurrence in question, and whether there was a close proximity

13  in time[.]" *Id*.  The requirement of substantial similarity is relaxed when prior incidents are

14  introduced to prove notice. "[A] lack of exact similarity of conditions will not preclude

15  admission provided the accident was of a kind that would have served to warn the

16  defendant." *Id.* at 401-53.

17       The Court concludes that the beating of Jeremy Flanders at Tent City was sufficiently

18  similar to the beating of Philip Wilson to warrant the admission of evidence concerning the

19  Flanders assault.  Both men were inmates at Tent City; both were beaten in their tents by

20  other inmates; a guard was posted in the tower in both cases, but no guard was present to stop

21  the beatings.  Although the assault of Flanders occurred seven years before the beating of

22  Wilson, it was not a one-time event that was long forgotten by the time of Philip Wilson's

23  assault. Jeremy Flanders' beating triggered a series of events that arguably put Defendants

24  on notice of dangerous conditions at Tent City, one of which (the Court of Appeals

25  affirmance of a jury verdict against the County and Defendant Arpaio) occurred as recently

26  as ten months before the Wilson assault.  The Court therefore does not conclude that the

27  Flanders beating is so remote in time as to render it irrelevant and inadmissible on the

28  question of notice.

1    Defendants contend that the Flanders beating should not be admitted because

2    substantial steps have been taken to upgrade Tent City since that time.  These include the

3    elimination of metal tent poles (with which Flanders was beaten), the addition of guards and

4    supervisors, and the construction of new perimeter security.   These changes may be

5    introduced by Defendants to show their response to the Flanders incident, but they do not

6    render the beating irrelevant.  "The fact that otherwise relevant evidence of similar incidents

7    or accidents involves components or occurrences different from the occurrence at issue goes

8    to the weight of the evidence, not admissibility."  *Id*. at 401-54.

9    Nor does the Court conclude that the Flanders beating should be excluded under

10   Rule 403.  A substantially similar beating in the same facility is highly relevant to the

11   question of whether Defendants were on notice of dangerous conditions at the facility.  Upon

12   Defendants' request, the Court will instruct the jury that they should consider this evidence

13   only with respect to Defendants' notice of dangerous conditions and not as proof of

14   Defendants' liability in this case.  With an appropriate limiting instruction, the relevancy of

15   this evidence will not be substantially outweighed by the risk of unfair prejudice.

16   Defendants also contend that the Flanders incident is inadmissible under Rule 404.

17   The rule provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not

18   admissible to prove the character of a person in order to show action in conformity therewith.

19   *It may, however, be admissible for other purposes, such as proof of . . . knowledge*[.]"  Fed.

20   R. Evid. 404(b) (emphasis added); *see United States v. Tsinnijinnie*, 91 F.3d 1285, 1288 (9th

21   Cir. 1996) ("Rule 404(b) allows evidence of prior bad acts 'as proof of . . . knowledge[.]'

22   Evidence should be excluded 'only when it provides nothing but the defendant's criminal

23   propensities.'") (citation omitted).

24   The test for admitting evidence under Rule 404(b) is whether (1) it tends to prove a

25   material fact, (2) the prior act is not too remote in time, (3) the evidence is sufficient to

26   support a finding that the Defendants committed the act, and (4) where knowledge is at issue,

27   the act is similar to that charged.  *Id.* at 1288-89; *see Duran v. City of Maywood*, 221 F.3d

28   1127, 1132-33 (9th Cir. 2000).  The Flanders assault satisfies this four-part test.  First, the

assault tends to prove a material fact – that Defendants had notice of dangerous conditions and the risk of inmate assaults at Tent City.  Second, the assault is not too remote in time. As noted above, it triggered a series of events that arguably put Defendants on notice of dangerous conditions at Tent City, one such event (the Court of Appeals decision) occurring only ten months before the Wilson assault.  Moreover, the Ninth Circuit has not identified a particular number of years beyond which past incidents become too remote, and has recognized the legitimate admission of events more than 12 years old.  *See United States v. Vo*, 413 F.3d 1010, 1018-19 (9th Cir. 2005) (no set time period; conviction 13 years old not too remote); *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (sexual assaults 13 years earlier not too remote).  Third, Defendants do not dispute that the Flanders assault occurred while Tent City was under their supervision or that they ultimately were held liable for it.  Fourth, as explained above, the Flanders assault is sufficiently similar to the Wilson assault to be probative of Defendants' knowledge.

Defendants ask the Court to take judicial notice of the Court of Appeals' decision in *Flanders*.  Rule 201 requires the Court to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  In this case, such facts include only the following: the Arizona Court of Appeals issued a decision on September 26, 2002, affirming a jury verdict in favor of Jeremy Flanders and against Maricopa County and Sheriff Joseph Arpaio on the basis of Mr. Flanders' beating while an inmate at Tent City.  These facts are capable of accurate and ready determination by resort to the official report of the Arizona Court of Appeals' decision.  But the Court's judicial notice will not encompass the Court of Appeals' opinion itself or the facts set forth in that opinion.  "[R]ecords of other courts generally may be noticed only to establish the fact of the litigation and actions of that court.  In general, documents may not be judicially noticed for the truth of the matter stated in them." *Weinstein's* § 201.12[3] at 201-38.

Moreover, it would be clear error for the Court, through judicial notice, to treat facts recited in the *Flanders* opinion as true.  The Arizona Court of Appeals did not purport to

1   make factual findings; the court instead considered whether the jury's verdict was supported
2   by substantial evidence.   In conducting this analysis, the Court viewed the evidence
3   presented at trial in the light most favorable to Mr. Flanders.  The Court's own "statement
4   of the facts reflects this approach, focusing on the evidence that supports the verdict against
5   the defendants." *Flanders*, 54 P.3d at 840.  The factual statements contained in the opinion
6   thus constitute an intentionally one-sided, favorable description of the evidence presented at
7   trial. The statements do not purport to be judicial findings, nor are they "capable of accurate
8   and ready determination by resort to sources whose accuracy cannot reasonably be
9   questioned," as required by Rule 201.

10          In summary, the Court makes the following rulings: (1) Plaintiffs may present
11   evidence concerning the beating of Jeremy Flanders at Tent City.  This evidence may be
12   presented for the purpose of demonstrating that Defendants were on notice that dangerous
13   conditions existed at Tent City and that precautions were required to protect inmates at the
14   facility.  The extent and nature of this evidence will be decided at trial.  (2) The Court will
15   take judicial notice that the Arizona Court of Appeals issued a decision on September 26,
16   2002, affirming a jury verdict in favor of Jeremy Flanders and against Maricopa County and
17   Sheriff Joseph Arpaio on the basis of Mr. Flanders' beating while an inmate at Tent City.
18   (3) The Court will not take judicial notice of additional facts or factual statements from the
19   *Flanders* decision.   (4) Defendants may request a limiting instruction that the Flanders
20   information, including the fact of the Court of Appeals' decision, may be considered only on
21   the issue of notice.

22          2.      The Court has considered Plaintiffs' Second Motion in Limine Regarding
23   Exclusion of Witness James Contreras.  Dkt. #317.  The motion will be **denied**.  Defendants
24   disclosed Officer Contreras pursuant to Rule 26(a) in their initial disclosure statement dated
25   May 16, 2005.  Although the statement did not include a separate description of Officer
26   Contreras' knowledge, it stated that he and the other witnesses listed in the same section
27   "have information and facts regarding the incident of July 23, 2003 at Tent City Jail
28   Facility."  Dkt. #393, Ex. 1.  The disclosure statement also indicated that Officer Contreras

1    was on the MCSO staff and either had completed or was mentioned in internal reports

2    pertaining to the assault on Mr. Wilson.  Given this information, Plaintiffs were on notice

3    that Mr. Contreras might possess relevant information.  Plaintiffs failed to depose him or to

4    serve written discovery seeking additional information regarding his knowledge.  Plaintiffs

5    argue that they could not depose him because the Court limited them to a total of 19 fact

6    depositions.  *See* Dkt. #108.  The Court permitted 19 fact depositions, however, because that

7    is the number Plaintiffs requested.  *Id*.  Had Plaintiffs requested 20 fact depositions, the Court

8    would have allowed them.  Plaintiffs also seek to exclude Officer Contreras' testimony on

9    the ground that he has no personal knowledge.  The Court will rule on such objections during

10    trial.

11            3.      The Court has considered Plaintiffs' Third Motion in Limine Regarding Philip

12    Wilson's Presentence, Pretrial, and Disposition Reports, Sentencing Memoranda, and Related

13    Documents.  Dkt. #318.  The motion will be **denied**.  Plaintiffs argue that the documents

14    should be excluded under Rules 401, 403 and 404, are inadmissible hearsay, and are

15    inadmissible under Arizona law.  Defendants assert that the documents are relevant to

16    Plaintiffs' damages and the reasons for Philip Wilson's death.

17            Neither party has provided the Court with copies of the presentence reports and other

18    documents at issue in this motion.  Without the documents in hand, the Court cannot

19    determine the relevancy of the documents and whether that relevance would be substantially

20    outweighed by the danger of unfair prejudice or the risk of jury confusion under Rule 403.

21            Defendants assert that the documents will not be admitted to prove actions in

22    conformity with character as prohibited by Rule 404, but instead to show why Philip Wilson

23    was attacked and to rebut portions of Plaintiffs' damages claims.  Because such possible uses

24    of the documents would not run afoul of Rule 404, the Court cannot conclude at this stage

25    that the documents should be excluded under Rule 404.

26            Plaintiffs cite *State v. Sepulveda*, 584 P.2d 1169, 1172 (Ariz. Ct. App. 1978), for the

27    proposition that Arizona presentence reports may never be admitted in evidence under

28    Arizona law.  *Sepulveda*, however, is based entirely on Arizona Rule of Criminal Procedure

1   26.6(d)(2).  *Id.*  Plaintiffs do not explain why this rule of criminal procedure should apply in

2   a federal civil case, nor do they cite civil authority to support their argument.

3          Plaintiffs argue that presentence reports can never be admissible under the hearsay

4   rule, but this is too broad a claim.  In this and other motions in limine, Plaintiffs quote *United*

5   *States v. Fortier*, 911 F.2d 100, 104 (8th Cir. 1990), for the proposition that "[n]o firmly

6   rooted exception to the hearsay rule can possibly apply to the presentence report."  But this

7   statement was made not in the context of determining whether a presentence report was

8   admissible in evidence, but in deciding whether the document's use at sentencing violated

9   the Confrontation Clause.  *Id.*  The decision in *United States v. Kovac*, 367 F.3d 1116, 1120

10  (9th Cir. 2004), also concerned the use of a presentence report at sentencing.  The Ninth

11  Circuit did note in *Kovac*, however, that "presentence reports are generally inadmissible at

12  trial to prove any of the hearsay reports they contain."  *Id.*  Although it thus appears that there

13  are serious hearsay concerns about the admissibility of presentence reports generally, the

14  Court cannot conclude that the reports in this case – which are not provided with the motion

15  – are inadmissible.

16         Defendants argue that the presentence reports are admissible as a public record under

17  Rule 803(8).  Plaintiffs may dispute this argument at trial, but even if it is correct, the

18  admissibility of a report as a public record does not result in the admissibility of hearsay

19  statements contained within the report.  "Statements by third persons that are recorded in an

20  investigative report are hearsay within hearsay.  As such, they are inadmissible unless they

21  qualify for their own exclusion or exception from the hearsay rule, e.g., as party admissions

22  or as qualifying under some other hearsay exception."  *Weinstein's* § 803.10[4][a] at 803-94.

23         From these principles, the Court reaches two conclusions.  First, presentence reports

24  probably will not be admitted wholesale.  Second, to the extent Defendants seek to introduce

25  specific portions of a presentence report at trial, Defendants must identify the portion to be

26  admitted and be prepared to show why it is relevant, why it does not run afoul of Rule 403,

27  and why the portion of the report to be admitted, and any statements contained in that

28  portion, are not excluded as hearsay.

1    The Court will deny Plaintiffs motion because it cannot determine at this time that the
2    documents in question are entirely inadmissible.  Because the documents may include
3    prejudicial information and the Court has not ruled that they are admissible, Defendants
4    should not mention them before the jury without first obtaining the Court's ruling on their
5    admissibility.

6    4.    The Court has considered Plaintiffs' Fourth Motion in Limine Regarding
7    Former Probation Officer Michaella Heslin.  Dkt. #319.  The motion will be **denied**.
8    Plaintiffs attach to their motion a copy of an October 3, 1996 presentence report prepared by
9    Ms. Heslin as well as the 53-page transcript of her deposition.  Dkt. #319, Ex. A, B.
10    Plaintiffs argue that Ms. Heslin's testimony and the presentence report should be excluded
11    under Rules 402, 403, 404, 602, the hearsay rule, and Arizona law.  Defendants provide a
12    non-specific response, arguing generally that the report is relevant and admissible as the
13    admission of a party opponent.

14    The Court has addressed most of Plaintiffs' argument in the preceding section, and
15    will not repeat its analysis here.  Plaintiffs' Rule 602 objection depends upon the foundation
16    laid for particular testimony and will need to be addressed during trial.  The Court does offer
17    a few additional observations for the parties' guidance in preparing for trial.

18    Portions of Ms. Heslin's presentence report are clearly irrelevant to this case.  The
19    report recounts various incidents of Philip Wilson's past criminal behavior, abuse that he
20    suffered as a child, and a host of other facts that have nothing to do with issues in this case.
21    Admission of the presentence report as a whole would be unduly prejudicial.  The Court
22    cannot conclude, however, that no portion of the presentence report or Ms. Heslin's
23    testimony is relevant and admissible.  This determination must be made at trial.  If
24    Defendants seek to admit the presentence report, they should seek to introduce only those
25    portions that clearly are relevant to issues in the trial and that fall within a hearsay exclusion
26    or exception.  If Defendants contend that statements of Philip Wilson in the report qualify
27    as admissions of a party opponent, they should be prepared to provide the Court with
28    authority holding that this exception applies to statements of a decedent when claims are

1   made by his estate.  And as noted above, because the report and Ms. Heslin's testimony

2   clearly contain prejudicial information, Defendants should not mention them to the jury

3   without first obtaining the Court's ruling on admissibility.

4          5.     The Court has considered Plaintiffs' Fifth Motion in Limine Regarding

5   Exclusion of Prior Arrests, Crimes and/or Convictions of Philip Wilson.  Dkt. #321.  The

6   motion will be **denied**.  Plaintiffs argue that Mr. Wilson's previous arrests and convictions

7   are inadmissible as irrelevant, unduly prejudicial, and violative of Rules 402, 403, 404 and

8   609.  Defendants argue that this information is relevant to Plaintiffs' claim that Mr. Wilson

9   was a law abiding citizen who was close to his parents.

10         Because the Court does not know the extent to which Plaintiffs will base their

11  damages claim on Mr. Wilson's character or the nature of his relationship with his parents,

12  the Court cannot rule on the relevancy of this evidence under Rule 402 or its possible

13  exclusion under Rule 403.  The Court can state, however, that Rules 404 and 609 do not

14  appear to control this issue.  Evidence introduced on the question of damages or the reason

15  for Philip Wilson's death would not be introduced to prove action in conformity with

16  character as prohibited by Rule 404.  Rule 609 concerns impeachment of a trial witness, and

17  Mr. Wilson will not be a trial witness.  The Court will rule on the relevancy and admissibility

18  of Mr. Wilson's prior arrests and convictions at trial.  Defendants should not mention this

19  information to the jury until after obtaining the Court's ruling.

20         6.     The Court has considered Plaintiffs' Sixth Motion in Limine Regarding Sexual

21  Orientation, Ambivalence to Sexual Identity, and/or Homosexuality of Philip Wilson.

22  Dkt. #322.  The motion will be **granted**.  Philip Wilson's sexual identity is not relevant to

23  the issues in this case.  There is no claim that his beating death resulted from his alleged

24  homosexuality.  Moreover, the Court concludes that introduction of such evidence would be

25  unfairly prejudicial to Plaintiffs and could confuse the jury.  Fed. R. Evid. 403.  The evidence

26  will therefore be excluded.  If Defendants believe that this evidence becomes relevant during

27  the course of the trial, they may ask the Court to revisit this ruling.

28         7.     The Court has considered Plaintiffs' Seventh Motion in Limine to Exclude

1    Prior Drug Usage by Philip Wilson.  Dkt. #324.  The motion will be **denied**.  Plaintiffs

2    contend that evidence of Mr. Wilson's previous drug usage is inadmissible under Rules 402,

3    403, and 404.  They assert that it is relevant to no issue in the case.  Defendants argue that

4    Mr. Wilson's drug usage is relevant to damages.  They assert that Plaintiffs are seeking

5    damages for loss of consortium and for loss of financial support and that Mr. Wilson's

6    history of drug use is relevant to both issues.  The Court cannot determine at this stage

7    whether Mr. Wilson's drug use will be relevant to Plaintiffs' damages claims, nor can the

8    Court determine whether the prejudice resulting from such evidence will substantially

9    outweigh its relevance.  The Court does conclude that evidence of past drug use admitted on

10   the question of damages would not run afoul of Rule 404.  Because evidence of drug use may

11   be unduly prejudicial to Plaintiffs, Defendants should not mention it before the jury without

12   first obtaining a ruling from the Court.

13        8.    The Court has considered Plaintiffs' Eighth Motion in Limine Regarding Past

14   Allegations that Philip Wilson Was Suicidal.  Dkt. #325.  The motion will be **denied**.

15   Plaintiffs argue that Mr. Wilson's past suicide attempts occurred more than 15 years ago and

16   are not relevant to any issue in this case.  Defendants contend that Mr. Wilson attempted

17   suicide shortly before his arrest in 1996 and that the evidence is relevant on the question of

18   damages.  In particular, Defendants assert that Mrs. Wilson will testify that she was her son's

19   closest confident, and yet Defendants can demonstrate in cross-examination that she did not

20   know of his mental health problems.  Defendants also argue that Plaintiffs are asserting a

21   claim for loss of financial support, and that Philip Wilson's suicidal tendencies undercut any

22   such claim.  The Court cannot conclude at this point that the evidence should be excluded.

23   That decision must be made at trial.  Because of the potential prejudice of this evidence,

24   however, Plaintiffs should not mention it to the jury before obtaining the Court's ruling.

25        9.    The Court has considered Plaintiffs' Ninth Motion in Limine to Exclude

26   Videotaped/Audiotaped Independent Psychiatric Exams of Terry and Pearl Wilson.

27   Dkt. #326.  The motion will be **granted**.  The motion seeks to exclude any evidence of or

28   reference to videotaped independent psychiatric examinations of Mr. and Mrs. Wilson.  The

1   videotapes were created during the questioning of Mr. and Mrs. Wilson by Defendants'
2   psychiatric expert.  The purpose of the expert's questioning was to form opinions to be
3   expressed by the expert at trial under Rule 702.  The examination, conducted under Rule 35
4   of the Federal Rules of Civil Procedure, was not noticed as or intended to be a deposition of
5   Mr. and Mrs. Wilson.  The Court understands from the parties' pleadings that Plaintiffs'
6   counsel were not present during the questioning.  To permit the videotape to be shown to the
7   jury would, in effect, transform the psychiatric examinations into depositions admitted in
8   evidence with none of the procedural protections normally accorded depositions.
9   Videotaping of the interviews was permitted so that Defendants' expert could refresh his
10  memory while preparing an expert report and preparing to testify at deposition and in trial,
11  not to create a *de facto* deposition to be presented to the jury.  The Court concludes that
12  admitting the videotapes and audiotapes in evidence would violate the procedural protections
13  established for depositions under Rule 30 of the Federal Rules of Civil Procedure.  The tapes
14  therefore may not be played to the jury.

15      10.   The Court has considered Plaintiffs' Tenth Motion in Limine Regarding
16  Negative Personal and Family History of Terry and Pearl Wilson. Dkt. #328.  The motion
17  will be **granted in part and denied in part**.

18      The Court will grant the motion with respect to Pearl Wilson's rape at age 16, her
19  abusive first marriage to Philip Witherspoon, and the stillbirth of her daughter.  None of these
20  events is relevant to the Wilson's damages claims.  Even if they could be considered relevant
21  in some degree, they are remote in time and their prejudicial effect would substantially
22  outweigh their marginal probative value.

23      The Court cannot conclude at this time whether Pearl Wilson's loss of her real estate
24  license, her subsequent lawsuit against a real estate broker, her health problems, or
25  difficulties in the Wilson's marriage will be relevant to their damages claim.  The Court must
26  make this determination during trial.  Because each of these events is potentially prejudicial,
27  however, Defendants should not mention them before the jury without a court ruling.

28      11.   The Court has considered Plaintiffs' Eleventh Motion in Limine Regarding

1   John Morgan and John Morgan's 2005 Presentence Report.  Dkt. #329.  Plaintiffs ask the

2   Court to exclude any evidence from or any reference to John Morgan and his February 7,

3   2005 Maricopa County presentence report.  The Court will **grant** the motion.

4          Plaintiffs argue that Mr. Morgan lacks personal knowledge to testify as a witness, that

5   his presentence report is inadmissible hearsay, and that the presentence report and other

6   hearsay cannot be introduced to impeach Mr. Morgan.  Defendants vigorously disagree.

7   Defendants assert that John Morgan has told the following facts to others:  that Philip Wilson

8   was an accomplished counterfeiter who could create highly accurate counterfeit money and

9   money orders; that an individual named Frank Bonini paid Wilson to create counterfeit

10  currency; that Wilson reneged on the deal; that Bonini sought to harm Wilson, leading

11  Morgan and Wilson to go into hiding in an apartment Morgan rented under a false name; that

12  three individuals broke into the apartment on the day after Wilson's arrest, held Morgan

13  against the wall, and left with Wilson's computer; that Frank Bonini persuaded Carl Stovall

14  to "take care" of Wilson because he had failed to produce the counterfeit currency; that

15  Wilson would have been assaulted whether he was in jail or not; and that Morgan did not

16  want to testify because he believed he would face retribution from Bonini if he did so.  Dkt.

17  #405.  Defendants argue that these facts are critical to their defenses and that they should be

18  permitted to call Morgan to testify at trial.  If he denies having made these statements, as he

19  did in his deposition, Defendants contend that they should be permitted to call investigator

20  Keith Sobraske, Probation Officer Melanie Strosberg, and MCSO Investigator Steve Gerlach

21  to testify that Morgan conveyed this information to them.  Defendants cite *United States of*

22  *America v. Young*, 86 F.3d 944, 949 (9th Cir. 1996), in support of this argument.  Defendants

23  also argue that Morgan's presentence report is admissible under Rule 803(8) and that

24  Morgan's statements to the presentence report writer are admissible under Rule 803(3) as

25  statements of Morgan's mental intent.

26         The Court recognizes that this is an important issue to Defendants.  Defendants wish

27  to demonstrate to the jury that Philip Wilson was killed because of his disagreement with

28  Bonini, not because of wrongful or negligent conduct on the part of Defendants.  But even

1    important evidence must be admissible.

2           The Court has read the entire deposition of John Morgan.  Dkt. #351, Ex. A (sealed).

3    Throughout his testimony, Morgan steadfastly denies that he told anyone the facts recited

4    above.  He denies that Wilson was being hunted by Bonini, feared for his life, or was the

5    subject of death threats.  He denies having heard such information or conveyed it to others.

6    Indeed, Morgan denied every assertion Defendants wish to make through him as described

7    in their response to Plaintiffs' motion in limine.  The question, then, is whether Defendants

8    may call Morgan to the stand, have him deny that he provided such information to Sobraske,

9    Strosberg, and Gerlach, and then call these individuals to impeach his testimony.

10          Morgan's statements to these individuals constitutes hearsay.  If he made the

11   statements to Sobraske, Strosberg, and Gerlach, they were made out of court and Defendants

12   would be admitting them for the truth of the matter asserted – that Philip Wilson was under

13   a death threat from Bonini.  Although Defendants do not mention Rule 613(b), the *Young*

14   case they cite relied on this rule for the admission of impeachment evidence.  Rule 613(b)

15   provides that extrinsic evidence of prior inconsistent statements may be used to impeach a

16   witness in certain circumstances.

17          The Ninth Circuit has held, however, that a party may not call a witness for the sole

18   purpose of impeaching that witness with substantive evidence it wishes the jury to believe.

19   Because the Ninth Circuit's explanation is critical to the Court's ruling, it is set forth at some

20   length:

21                  It is elementary that statements made outside the courtroom and offered
             to prove the truth of those statements are hearsay.  Hearsay statements may be
22           admissible to impeach a declarant who subsequently testifies at trial, but are
             not admissible as substantive evidence . . . .  Because of the recognized
23           conceptual difficulties juries have in distinguishing testimony admissible for
             impeachment from testimony admissible for its substance, the maximum
24           legitimate effect of the impeaching testimony can never be more than the
             cancellation of the adverse answer by which the party is surprised.
25           Consequently, a party is not permitted to get before the jury, under the guise
             of impeachment, an ex parte statement of a witness, by calling him to the stand
26           when there is good reason to believe he will decline to testify as desired, and
             when in fact he only so declines.

27

28   *United States v. Crouch*, 731 F.2d 621, 623 (9th Cir. 1984) (quotations, citations, and

1    brackets omitted).  As stated in another case, "impeachment is not permitted where it is

2    employed as a guise for submitting to the jury substantive evidence that is otherwise

3    unavailable."    *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990)

4    (quotation marks and citation omitted).

5        Mr. Morgan's deposition leaves no doubt that he vehemently denies having made the

6    statements Sobraske, Strosberg, and Gerlach would attribute to him.  This point was made

7    over and over again during 86 pages of transcript.  The parties and the Court thus have "good

8    reason to believe" Morgan would deny any knowledge of death threats against Philip Wilson.

9    *Crouch*, 731 F.2d at 623.  If he were called to testify at trial, then, the purpose would be to

10    impeach him with testimony from Sobraske, Strosberg, and Gerlach, setting forth the

11    statements he allegedly made to these individuals about death threats on Philip Wilson's life.

12    The impeachment evidence would not be admitted for the Rule 613(b) purpose of persuading

13    the jury that John Morgan is untruthful, but for the purpose of proving that Philip Wilson was

14    killed because of his disagreement with Bonini.  Such use of the impeachment tool would

15    clearly run afoul of the Ninth Circuit rule set forth above.

16        The Court also concludes that John Morgan's presentence report is inadmissible

17    hearsay. Defendants argue that the report is admissible as a public record under Rule 803(8).

18    As noted above, however, the admissibility of the report as a public record does not result

19    in the admissibility of hearsay statements contained within the report.  The specific statement

20    Defendants seek to introduce from John Morgan's presentence report reads as follows:

21            The defendant [Morgan] states he got an apartment using some else's
        name.  He claims he was helping his friend Phil Wilson who was being
22        "hunted by others."  He claims he was not living at the apartment.  His friend
        Phil Wilson was living there until Maricopa County Adult Probation arrested
23        him.  He claims Phil Wilson was hurt in [sic] while he was in the "tents" and
        eventually died.  He would like to be granted probation and states he will "take
24        what it takes to get out of this."

25    Dkt. #351, Ex. B (sealed).

26        This statement made by Mr. Morgan to Probation Officer Strosberg is hearsay in its

27    own right – an out-of-court statement to be introduced for the truth of the matter asserted –

28    and therefore is admissible only if it qualifies for an exclusion or exception to the hearsay

rule. *Weinstein's* § 803.10[4][a] at 803-94. Defendants contend that the statement is admissible under Rule 803(3) "as it is a statement setting forth Mr. Morgan's intent in utilizing the false identification." Dkt. #405 at 3. The rule applies, however, only to "[a] statement of the declarant's *then existing* state of mind[.]" Fed. R. Ev. 803(3) (emphasis added). Even if Morgan's statement to the probation officer could be viewed as a description of his mental state when he rented the apartment months earlier, it does not constitute a description of his "then existing" state of mind – his state of mind at the time he made the declaration to the probation officer. The Court accordingly concludes that Morgan's statement to Strosberg is not admissible under Rule 803(3). Defendants cite no other applicable exception or exclusion from the hearsay rule.

Because the Court concludes that Defendants may not call John Morgan as a witness solely for the purpose of impeaching him with prior statements he allegedly made regarding threats on Philip Wilson's life, and because Morgan's statement to Probation Officer Strosberg as reflected in the presentence report constitutes inadmissible hearsay, Plaintiffs' motion is granted. If Defendants have reason to believe that John Morgan will recant his deposition testimony and will in fact testify that he knew of threats on Philip Wilson's life, they may raise with the Court the possibility of calling him to testify to these matters at trial. As this decision makes clear, however, they may not call him for the purpose of impeaching his testimony with hearsay testimony from others.

12.    The Court has considered Plaintiffs' Twelfth Motion in Limine Regarding Exclusion of Witness Mike Olson. Dkt. #330. Defendants do not oppose the motion. Dkt. #381. The motion will be **granted**.

13.    The Court has considered Plaintiffs' Thirteenth Motion in Limine Regarding 1984 Sexual Harassment Allegation Against Plaintiffs' Expert Bair. Dkt. #331. The motion will be **granted**. The fact that Mr. Bair was the subject of a sexual harassment allegation in 1984 – one that was found to be without merit – is not relevant to the reasonableness or credibility of Mr. Bair's expert opinions in this case. Defendants state that they simply intend to use this incident to illustrate that unfounded allegations can be made. The Court

1    concludes, however, that the very marginal relevance of the allegation against Mr. Bair on

2    this point is substantially outweighed by the risk of unfair prejudice.  Defendants can make

3    their point in a variety of other ways during trial.

4        14.    The Court has considered Plaintiffs' Fourteenth Motion in Limine Regarding

5    the Qualifications of Plaintiffs' Expert Bair.  Dkt. #332.  The motion will be **granted**.  The

6    motion asks the Court to preclude Defendants from referring to a case in which Mr. Bair was

7    disqualified from testifying.  Plaintiffs assert that the disqualification occurred because of

8    counsel's untimely disclosure, not because of Mr. Bair's lack of qualification.  Defendants

9    respond by asserting that the civil trial minutes show that Mr. Bair was in fact disqualified

10   because, in part, he was not a qualified expert witness.  The copy of the trial minutes attached

11   to Defendants' brief is illegible.

12       The Court concludes that an expert's disqualification in a previous trial is of dubious

13   relevance in this case.  The issues in the previous trial, the point at which the disqualification

14   occurred, the quality of advocacy by the attorneys, what other evidence had been presented,

15   and a host of other factors might well have influenced the trial judge's decision. Even if

16   Defendants could show that circumstances in the previous trial were highly similar to this

17   case, such a showing would require an amount of time disproportionate to the relevancy of

18   the prior disqualification.  The qualifications of Mr. Bair will be for this Court and the jury,

19   not a judge in a different case, to decide.

20       15.    The Court has considered Plaintiffs' Fifteenth Motion in Limine Regarding

21   Defendants' Late-Named Non-Parties at Fault Brandon Antonides, Enrique Molina Bermea,

22   Frederick A. Nelson, Brian K. Hagg, George M. Anderson, and Robert Buskirk.  Dkt. #334.

23   The Court will **deny** the motion.  Plaintiffs seek to exclude these individuals as non-parties

24   at fault because their names were not disclosed within 150 days after Defendants' answers

25   as required by Arizona Rule of Civil Procedure 26(b)(5).  As Defendants note, however, the

26   answer filed on behalf of Defendants Arpaio and Curtis on December 6, 2004, specifically

27   provided notice to Plaintiffs, pursuant to Rule 26(b)(5), that the assailants of Philip Wilson

28   were non-parties at fault.  Three days later Defendants Arpaio and Curtis included this same

1   assertion in their initial notice of non-party at fault.  The answer of Maricopa County filed

2   on May 10, 2005, likewise made this assertion.

3       The Court concludes that the disclosures made by Defendants within the 150-day

4   period were sufficient to satisfy the purposes of Rule 26(b)(5).  Arizona cases "'reflect a

5   recognition of the [Arizona] legislature's strong desire to ensure the comparative fault

6   principles are applied in most cases where the actions of more than one party combined to

7   cause harm.'" *Rosner v. Denim & Diamonds, Inc.*, 937 P.3d 353, 355 (Ariz. Ct. App. 1996)

8   (quoting *Natseay v. City of Tempe*, 909 P.2d 441, 444 (Ariz. Ct. App. 1995)).  Arizona courts

9   have allowed juries to allocate fault to an unidentified driver of a red Mercedes Benz who

10  might have caused an accident, *Smith v. Johnson,* 899 P.2d 199, 206 (Ariz. App. 1995), and

11  to unidentified patrons of a bar who assaulted a plaintiff, *Rosner*, 937 P.2d at 953.  Plaintiffs

12  have known from the outset of this case that various assailants attacked Philip Wilson.

13  Defendants timely identified the assailants as non-parties at fault.  Although the names of

14  some assailants were not disclosed until January 3, 2006, this was within the discovery

15  period and afforded Plaintiffs an opportunity to conduct discovery concerning the assailants.

16  The purposes of Rule 26(b)(5) have been satisfied.

17      16.    The Court has considered Defendants' Motion In Limine #1 to Preclude

18  Evidence of Other Lawsuits, Settlements, Consent Decrees, or Judgments.  Dkt. #320.  The

19  motion will be **granted**.  Defendants seek to preclude evidence of or reference to a number

20  of previous cases against Defendants.  These cases concern housing conditions for pretrial

21  detainees, custody of the mentally ill, medical care for inmates, the use of excessive force

22  and restraint chairs, and the broadcasting of pretrial detainees images over the Internet.  *Id.*

23  at 1-2.  Defendants contend that the evidence should be excluded under Rules 401, 402, 403,

24  404(b), and 408.  Plaintiffs respond by arguing that these prior lawsuits are relevant to

25  Defendants' knowledge of dangerous conditions at Tent City.

26      As noted above, "other act" evidence is admissible under Rule 404(b) if the following

27  test is satisfied: (1) there must be sufficient proof for the jury to find that defendant

28  committed the other act, (2) the other act must not be too remote in time, (3) the other act

1  must be introduced to prove a material issue in the case, and (4) if knowledge is at issue, the

2  other act must be similar to the events at issue in this case. *Duran*, 221 F.3d at 1132-33. The

3  Court concluded above that the Flanders incident satisfies this test.   In responding to

4  Defendants' motion, however, Plaintiffs make no attempt to show that these previous

5  lawsuits were similar to Philip Wilson's beating.   Indeed, it appears that these previous

6  lawsuits did not concern incidents of violence at Tent City.   The Court concludes that the

7  evidence does not satisfy the similarity requirement for admissibility under Rule 404(b) on

8  the question of knowledge.

9        In addition, even if the four conditions for admissibility under Rule 404(b) were met,

10  the evidence would still be excluded under Rule 403. *Id*. at 1133. The relevancy of the prior

11  lawsuits is marginal at best.   As noted, the lawsuits did not concern incidents of violence at

12  Tent City.   To the extent lawsuits concerning other issues might be relevant at all, the Court

13  concludes that the relevance is substantially outweighed by the danger of unfair prejudice,

14  confusion of the issues, and considerations of undue delay.   The jury might conclude,

15  unfairly, that if Defendants have been found liable in other cases they must be liable here.

16  Moreover, if evidence of these numerous prior lawsuits was admitted, Defendants would be

17  compelled to present rebuttal evidence concerning the nature and outcome of those lawsuits.

18  The case would devolve into a series of mini-trials concerning the relevancy and outcome

19  of these other cases, resulting in an unnecessarily lengthy trial for the parties, the Court, and

20  the jury.   The Court concludes that the evidence of lawsuits and incidents other than the

21  Flanders incident is precluded under Rules 403 and 404(b).

22        17.    The Court has considered Defendants' Motion in Limine #2 Regarding

23  *Flanders v. Maricopa County*.   Dkt. #323. This motion was **denied in part** for the reasons

24  set forth in part 1 of this order.

25        18.    The Court has considered Defendants' Motion in Limine #3 Regarding

26  Inflammatory and Unduly Prejudicial Video Footage of Philip Wilson and Autopsy

27  Photographs. Dkt. #327. The motion will be **denied**. Defendants argue that videotape of

28  Philip Wilson at a care facility and photographs of his autopsy should be excluded under

1   Rules 401, 402, and 403.  Plaintiffs disagree, arguing that the evidence is highly relevant to

2   issues of causation and damages.

3          No party has provided the Court with copies of the photographs or videotapes.  As a

4   result, the Court cannot assess their relevancy or potential for unfair prejudice.  These issues

5   will have to be addressed at trial.

6          The Court does note, however, that there is likely to be little if any probative value in

7   autopsy photographs.  There is no issue about the medical cause of Philip Wilson's death.

8   Nor do autopsy photographs appear to have any relevancy to damages.  They likely do not

9   shed light on the nature of Mr. Wilson's suffering during the four months that he lived after

10  the assault, nor do they illustrate the difficulties his parents endured during those months.

11  The Court believes the prejudicial effect of autopsy photographs almost certainly will

12  substantially outweigh any possible relevancy, but cannot make a final decision until it sees

13  the evidence and better understands the nature of Plaintiffs' damages claims.  Likewise, the

14  Court cannot determine the relevancy or potential prejudice of other photographs or the

15  videotape until it has seen them and understands the issues at trial.

16         19.    The Court has considered Defendants' Motion in Limine #4 to Exclude the

17  Amnesty International Article, Department of Justice Press Release, and Miller Report.

18  Dkt. #333.  The motion will be **denied**.  Defendants argue that these documents are hearsay

19  and are inadmissible under Rules 403, 404(b), 602, 701, and 702.  Plaintiffs respond by

20  arguing that the documents would not be admitted for the truth of the matters asserted, but

21  instead to show Defendants' knowledge.  Plaintiffs alternatively argue that the documents

22  should be admitted under Rule 807.

23         The Court cannot rule on this issue without reviewing the documents in question

24  (which were not provided by the parties) and understanding the issues at trial.  The Court

25  will, however, provide several observations for the parties' guidance.

26         First, if Plaintiffs seek to introduce these documents, they should introduce only those

27  portions that are relevant to issues in the case.  Plaintiffs should be prepared to explain why

28  the portions to be admitted are relevant, not prejudicial, and not excluded as hearsay.

1    Second, the Court has doubts about Plaintiffs' argument that the documents would be

2    admitted to prove notice, not the truth of the matters asserted.  If the documents are admitted

3    to show that Defendants knew of dangerous conditions at the jail, they necessarily are also

4    introduced to show that the dangerous conditions existed.

5    Third, Plaintiffs should be mindful of hearsay within hearsay.  The description of the

6    documents suggests that they quote statements from other individuals, some of whom are not

7    identified.  Plaintiffs must be prepared to address the hearsay admissibility not only of the

8    documents they seek to introduce, but of any hearsay contained within those documents.

9    20.    The Court has considered Defendants' Motion in Limine #5 to limit Philip

10   Wilson's medical expenses to the AHCCCS lien claim amount.  Dkt. ##335, 340 (duplicate

11   filing).  The motion will be **denied**.  Defendants ask the Court to limit Plaintiffs' proof and

12   damages claim to the $132,821.18 paid by AHCCCS for Wilson's medical care, rather than

13   the approximately $375,000 in medical charges billed to AHCCCS.  Defendants argue that

14   recovery of more than the amount actually paid for medical care will result in a windfall to

15   Plaintiffs.  As Plaintiffs note, however, a plaintiff is "entitled to claim and recover the full

16   amount of her reasonable medical expenses for which she was charged, without any

17   reduction for the amounts apparently written off by her healthcare providers pursuant to

18   contractually agreed-upon rates with her medical insurance carriers."  *Lopez v. Safeway*

19   *Stores, Inc.,* 159 P.3d 487, 496 (Ariz. Ct. App. 2006).

20   21.    The Court has considered Defendants' Motion in Limine #6 to Preclude

21   Evidence Regarding Subsequent Classification Documents.  Dkt. ##336, 341 (duplicate

22   filing).  The motion will be **denied**.  Defendants ask the Court to preclude the introduction

23   of post-incident classification documents related to six inmates alleged to have been involved

24   in the assault on Philip Wilson.  Defendants argue that these documents must be excluded

25   under Rules 401, 402, 407, and 703.

26   The Court cannot grant Defendants' motion merely because the documents concern

27   classifications that occurred after Philip Wilson's assault.  The Ninth Circuit has held that

28   "post-event evidence is not only admissible for purposes of proving the existence of a

1    municipal defendant's policy or custom, but is highly probative with respect to that inquiry."

2    *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997).  Nor can the Court conclude

3    that the specific documents in question are irrelevant, unduly prejudicial, or evidence of

4    subsequent remedial measures.  Defendants have not provided the Court with the documents.

5    Until the Court can review the documents in the context of the trial, it cannot make the

6    determination sought by Defendants.  Nor can the Court determine whether the documents

7    are inadmissible under Rule 703 until it hears the testimony of Plaintiffs' expert.  Because

8    these documents might be unduly prejudicial to Defendants, they should not be mentioned

9    by Plaintiffs until the Court has addressed this issue during trial.

10        22.    The Court has considered Defendants' Motion in Limine #7 to Preclude

11   Evidence of Emergency Response Time and Testimony Related to Coagulation.  Dkt. ##337,

12   342 (duplicate filing).  The motion will be **granted in part and denied in part**.  Defendants

13   ask the Court to preclude Plaintiffs from eliciting testimony from Officer Thomas Morwood

14   regarding the fact that the blood under Philip Wilson's head was "curdled" when he arrived,

15   causing Morwood to believe that Wilson had been bleeding for more than five minutes.

16   Defendants assert that this testimony is beyond the scope of lay opinion testimony under

17   Rule 701.  Plaintiffs argue that the evidence is relevant and admissible under Rule 701.

18        Rule 701 permits lay witnesses to express opinions that are (a) rationally based on the

19   perception of the witness, (b) helpful to a clear understanding of the witness' testimony or

20   the determination of a fact in issue, and (c) not based on scientific, technical, or other

21   specialized knowledge within the scope of Rule 702.  The Court cannot conclude that Officer

22   Morwood's testimony concerning the *appearance* of the blood – that it was coagulating – is

23   inadmissible under Rule 701.  Such testimony would be rationally based on what Morwood

24   saw when he arrived at the scene, and an observation that a liquid is thickening is within

25   everyday experience and not based on scientific, technical, or other specialized knowledge.

26   Whether the appearance of the blood, without more, would be helpful to the jury is a matter

27   that must be resolved by the Court at trial.

28        The Court does conclude, however, that Officer Morwood may not render an opinion

1    regarding the amount of time that had elapsed based on his observation of the condition of
2    the blood.  Lay persons typically do not have the experience or knowledge necessary to
3    accurately determine the passage of time simply by observing the condition of blood.  Such
4    an estimate must be based on some form of specialized, scientific, or technical knowledge.
5    As a result, Officer Morwood's opinion concerning the amount of time that had elapsed since
6    Philip Wilson began bleeding may not be admitted under Rule 701.  Had Plaintiffs wanted
7    to present evidence on this issue at trial, they should have retained an expert to provide
8    appropriate opinions under Rule 702.

9         23.    The Court has considered Defendants' Motion in Limine #8 to Preclude Dennis
10   Liebert as a Witness as well as Any Testimony or Reference to Any of His Reports or the
11   Contents Thereof.  Dkt. #338.  The motion will be **denied**.  Defendants argue that Liebert
12   cannot be called to testify because he was not listed as an expert witness by Plaintiffs, that
13   his testimony and reports are irrelevant and prejudicial, and that his report constitutes
14   hearsay.  Plaintiffs argue that the Court resolved these issues in its summary judgment ruling,
15   but Plaintiffs are incorrect.  The Court did not address these arguments in its summary
16   judgment ruling.  Unfortunately, Plaintiffs spend little time responding to Defendants'
17   arguments and do not address at all Defendants' claim that the Liebert report is hearsay.

18        The Court concludes, nonetheless, that Mr. Liebert may testify as a fact witness at
19   trial.  His testimony will be relevant to Defendants' notice of dangerous conditions at the jail.
20   To the extent Mr. Liebert is testifying about opinions he previously expressed to Defendants,
21   he will be testifying as a fact witness about those previous communications.  If Plaintiffs seek
22   to elicit new opinions from Mr. Liebert, Defendants may object.  Before introducing Mr.
23   Liebert's report in evidence, Plaintiffs must show why it is not barred by the hearsay rule.

24        24.    The Court has considered Defendants' Motion in Limine #9 to Preclude George
25   Sullivan as a Witness as well as Any Testimony or Reference to His Report and the Contents
26   Thereof.  Dkt. #339.  The motion will be **denied**, but the Court has doubts about the
27   admissibility of Mr. Sullivan's testimony and report for the reasons stated below. Defendants
28   argue that Mr. Sullivan's testimony would constitute undisclosed expert testimony under

1  Rule 702. The Court disagrees.  If Mr. Sullivan is permitted to testify, he will testify as a fact

2  witness concerning his communications with Defendants.  Defendants also argue that Mr.

3  Sullivan's report is protected by the deliberative process privilege.  But the report itself

4  makes clear that Mr. Sullivan was retained by the United States Department of Justice to

5  address accusations against Defendants.  His report was not created as part of the internal

6  deliberative process of Defendants.

7  Defendants argue that the Sullivan report and testimony are irrelevant and prejudicial.

8  The Court has reviewed the report, and views its relevance as marginal.  The report primarily

9  focuses on use-of-force issues at county jails.  It also addresses a variety of other issues.

10 Although it comments generally on overcrowding, the report does not appear to focus on

11 Tent City or to be based on any specific analysis of that facility.  Before Plaintiffs will be

12 permitted to call Mr. Sullivan to testify or place his report in evidence, they will need to

13 demonstrate its specific relevance and that the relevance is not substantially outweighed by

14 the risk of unfair prejudice and jury confusion.  Because the Court may exclude Mr.

15 Sullivan's testimony and his report, Plaintiffs should not mention them to the jury before

16 obtaining the Court's ruling.

17      25.    The Court has reviewed Defendants' Motion in Limine #10 to Preclude

18 Plaintiff from Introducing or Referencing Articles Regarding Sheriff Arpaio or Maricopa

19 County Jails. Dkt. #343.  The motion will be **denied**.  The motion attaches a number of

20 articles, but discusses them only generally.  An article-by-article analysis will be necessary

21 to determine admissibility.  The Court cannot conclude at this stage that all portions of all

22 of the articles are inadmissible, nor can the Court conclude that all of them constitute

23 inadmissible hearsay.  The Court advises the parties, however, that it intends to look closely

24 at such articles to determine their relevancy to issues in this lawsuit.  The Court also will

25 require the proponent of such evidence to demonstrate why the specific portions of the

26 articles to be admitted, and hearsay statements within those portions, are not barred by the

27 hearsay rule.

28      26.    The Court has considered Defendants' Motion in Limine #11 to Preclude

1    Plaintiffs from Introducing or Referencing Television or Video Footage Regarding Sheriff

2    Arpaio or Maricopa County Jails.  Dkt. #344.  The motion will be **denied**.  Defendants have

3    not provided the Court with copies of the videotapes in question.  Without having reviewed

4    the tapes, the Court cannot determine their relevancy, their prejudicial effect, and whether

5    they would be admissible under the hearsay rules.  These issues will need to be addressed at

6    trial.  Again, however, the Court notes that it intends to require clear relevancy to issues in

7    this case and will require the proponent of any portion of such evidence to demonstrate why

8    the evidence is not barred by the hearsay rule.

9        27.    The Court has considered Defendants' Motion in Limine #12 to Preclude

10   Plaintiffs from Eliciting Testimony or Making Reference to the Fact that the Inmates Who

11   Assaulted Philip Wilson Were Not Prosecuted.  Dkt. #345.  The motion will be **granted**.

12   The fact that the Maricopa County Attorney's Office – an office overseen by a separately

13   elected county official – chose not to prosecute the inmates who assaulted Philip Wilson is

14   not relevant to any issue in this case, nor does the Court conclude that this post-event

15   evidence is probative of the state of mind of Defendants at the time of Philip Wilson's

16   assault.  Depending on the development of the evidence at trial, the lack of prosecution may

17   become relevant on the question of non-parties at fault.  Because it does not appear relevant

18   to the issue at this time, the Court will grant the motion.  If Plaintiffs believe that it does

19   become relevant to the question of non-parties at fault or another issue in the case, they may

20   raise that issue with the Court during trial.

21       28.    The Court has considered Defendants' Motion in Limine #13 to Preclude

22   Evidence of Subsequent Remedial Measures Related to Removal of Drawers and Addition

23   of a Detention Officer to Yard 1.  Dkt. #346.  The motion will be **granted**.  This evidence

24   is precluded by Rule 407, as its primary purpose would be to suggest that Defendants acted

25   wrongfully in failing to add additional officers to the yard before Philip Wilson's assault and

26   in failing to remove the drawers before the assault.  Plaintiffs contend that the evidence is

27   relevant to show the feasibility of precautionary measures. If Defendants suggest during trial

28   that the addition of guards or the removal of drawers were not feasible prior to Philip

1  Wilson's assault, Plaintiffs may ask the Court to reconsider this ruling.  Plaintiffs also

2  contend that the evidence is relevant to Defendants' removal and loss of the specific drawers

3  that were used to assault Philip Wilson.  The fact that Defendants failed to retain the drawers

4  and failed to make them available to Plaintiffs may be demonstrated during trial without

5  eliciting evidence that drawers permanently were removed from the facility.

6         29.     The Court has considered Defendants' Motion in Limine #14 Regarding Maria

7  Leon's Employment Status.  Dkt. #347.  The motion will be **granted**.  Plaintiffs do not

8  oppose the motion.

9         DATED this 2nd day of March, 2007.

10

11

12  _____

13                  David G. Campbell
                 United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28